IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-02061-CMA-MJW

DARCY PARMER,

Plaintiff,

v.

WELLS FARGO & COMPANY, et al.,

Defendants.

_____

ORDER REGARDING DEFENDANTS' MOTION FOR PROTECTIVE ORDER
(DOCKET NO. 50)

_____

**Entered by Magistrate Judge Michael J. Watanabe**


On May 4, 2009, this court conducted a hearing on Defendants' Motion For

Protective Order To Prevent The Deposition Of Kevin McCabe (Docket No. 50).  After

hearing oral argument, taking judicial notice of the court's file and having considered

applicable Federal Rules of Civil Procedure and case law, this court makes the following

findings of fact, conclusions of law and order.

**FINDINGS OF FACT**

The Court finds:

1.      That  in accordance with the directives of United States District Judge

Arguello in her Order Sustaining Objection to the Magistrate Judge's Ruling (docket no.

97), this court held oral argument on Defendants' Motion For Protective Order To

Prevent The Deposition Of Kevin McCabe (Docket No. 50);

2.  That I have jurisdiction over the subject matter and over the parties to this lawsuit;

3.  That venue is proper in the state and District of Colorado;

4.  That each side has been given a fair and adequate opportunity to be heard;

5.  That during the time period relevant to the Complaint, Plaintiff was a Quality Assurance Analyst at Well Fargo Bank N.A. in Colorado Spring, Colorado.  Her duties required her to research instances of suspected fraud in connection with loan applications submitted to Wells Fargo;

6.  That in this lawsuit, Plaintiff alleges that Wells Fargo violated section 806 of the Sarbanes-Oxley Act of 2002 and wrongfully discharged her in violation of public policy.  Plaintiff contends that certain underwriters ignored her reports of fraud and improperly approved falsified loan applications.  Plaintiff claims that she reported this activity to her supervisors as well as to the Wells Fargo's ethics hotline and that she was retaliated against for doing so.  Wells Fargo denies Plaintiff's allegations;

7.  That on October 24, 2008, Plaintiff noticed the deposition of Wells Fargo's General Auditor, Kevin McCabe, for November 13, 2008.  In her briefing, Plaintiff stated she wanted to depose Mr. McCabe about (1) the anonymous report Mr. McCabe

submitted to the audit committee; (2) the audit committee's actual customs and practices; (3) how Mr. McCabe delivers fraud reports; (4) certain of Wells Fargo's policies; and (5) whether an investigation was conducted into Wells Fargo's allegedly prohibiting Plaintiff from using the Ethics Line;

8.      Defendant seeks a protective order prohibiting the deposition of Mr. McCabe;

9.      On October 3, 2008, Wells Fargo announced a merger with Wachovia Bank.  On November 13, 2008, the original date on which Plaintiff noticed his deposition, Mr. McCabe was appointed Chief Auditor and Executive Vice President of the newly-merged company.  (Supplemental Declaration of Kevin McCabe ("Supp. McCabe Dec."), available at Docket No. 99, ¶3). Mr. McCabe reports directly to the Chief Executive Officer of Wells Fargo as well as to the Chair of the Audit Committee of Wells Fargo's Board of Directors.  (Declaration of Kevin McCabe ("McCabe Dec."), available at Docket No. 51-2, ¶¶  2, 4);

10.     Prior to November 13, 2008, Mr. McCabe had approximately 590 reports. He now has 1,100 reports.  Due to the merger, Mr. McCabe is going through his newly combined organization person-by-person and job duty-by-job duty to determine how to best integrate Wells Fargo's and Wachovia's work forces.  This reorganization and combining of the two separate workforces will take a great deal of time over the coming months.  (Supp. McCabe Dec., ¶4);

11.     Mr. McCabe typically works on average twelve to fourteen hours a day each day during the week and a total of six additional hours over the weekend.  During the week, he spends approximately four to five hours a day in meetings.  Rarely does a day go by that he does not meet with Wells Fargo's Chief Executive Officer, a member of Wells Fargo's Board of Directors, his direct reports, or one of his peers on Wells Fargo's operating committee (his peers also directly report to the Chief Executive Officer).  Taking the time to prepare for and attend a deposition would adversely affect Mr. McCabe's ability to get his job done.  It would also affect the other senior executives who he meets with on a regular basis.  (Id., ¶5);

12.     Prior to the merger with Wachovia, Mr. McCabe traveled approximately 120 days per year, which equates to approximately one out of every two business days or one out of every three days per year.  His travel schedule is becoming heavier because he now needs to visit the former Wachovia Bank locations as part of his responsibilities for integrating Wachovia Bank into Wells Fargo Bank.  (Id., ¶6);

13.     Last year, although he did not feel well on more than one occasion, Mr. McCabe took only one sick day off from work.  Due to the demands of his position, he still had to work during his sick day.  Mr. McCabe worked approximately half of his one sick day off.  (Id., ¶7);

14.     After receiving Plaintiff's complaints of fraud and retaliation, Wells Fargo's Corporate Security organization investigated her complaints in conjunction with Wells

Fargo's Human Resources department. Shelly Hunt oversaw the investigation, which was performed by a number of Ms. Hunt's subordinates and their peers.  (Deposition of Shelly Hunt ("Hunt Depo."), available at Docket No. 50-3, at 52:5-53:15, 87:12-19);

15.     Mr. McCabe did not personally direct or oversee the investigation into Parmer's allegations, direct the investigation, or assist in the investigation in any way. (McCabe Dec., ¶ 5);

16.     Ms. Hunt reports to Michael Bacon, a Senior Vice President, who in turn reports to Bill Wipprecht, an Executive Vice President and Wells Fargo's Chief Security Officer.  Mr. Wipprecht in turn reports to Mr. McCabe, who has ultimate responsibility for all of Wells Fargo's audit and control functions.  (McCabe Dec., ¶ 4-5).  Therefore, there are several layers between Mr. McCabe and those who have personal knowledge of Plaintiff's claims;

17.     Certain investigations, including Plaintiff's, are reported to the Audit Committee of Wells Fargo's Board of Directors.  (McCabe Dec., ¶ 6).  Several of Mr. McCabe's subordinates have detailed knowledge of this process, including Michael Bacon and Loretta Sperle.  Mr. Bacon is directly involved in the preparation of the summaries that are sent on to the Audit Committee, as is Ms. Sperle.  They are also both directly involved in ensuring the quality and thoroughness of the investigations themselves.  (McCabe Dec., ¶ 6);

18.     Ms. Hunt testified that Ms. Sperle is in charge of preparing the summaries and forwarding them to the Audit Committee: : "Loretta Sperle ... reports items like this to the board.  She produces the report...." (Hunt Depo., 133:18-19; see also 164:7-15). Mr. Bacon also knows the criteria for determining which investigations are reported to the Audit Committee.  (Hunt Depo., 45:13-18);

19.     Mr. McCabe had no role in deciding whether to present the summary of the investigation into Plaintiff's complaints to the Audit Committee.  Instead, the summary of that investigation was included in the report to the Audit Committee as a matter of course due to preset criteria that are used to determine which investigations are reported and which are not. (McCabe Dec., ¶ 7);

20.     The summary itself was included in an appendix to a roughly 100 page report that is presented to the Audit Committee on a quarterly basis.  (McCabe Dec., ¶ 8).  The summaries range from ¼ to ½ page in length. (Id.); and,

21.     Mr. McCabe is not specifically familiar with the summary of the investigation into Plaintiff's complaints.  (Id.)  At the time he presented the summary to the Audit Committee he would not have known that the report pertained to Plaintiff, since the names of the complaining employees are not typically included in the summaries themselves.  (Id.)  Mr. McCabe did not comment on the summary of the investigation into Plaintiff's complaints to the Audit Committee, and no members of the Audit Committee asked him any questions about the summary.  (McCabe Dec., ¶ 9).

## CONCLUSIONS OF LAW

Courts have broad authority to enter protective orders upon a showing of good cause "to protect a party or a person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c).

Applying the Rule 26(c) standard, the United States Court of Appeals for the Tenth Circuit affirmed the issuance of a protective order of a high-level corporate official. In that case, the Tenth Circuit relied on the following facts in upholding the protective order: (1) the deposition imposed "severe hardship" on the deponent, (2) the reasons for the deposition were of little relevance to the plaintiff's lawsuit, (3) the deponent lacked personal knowledge about the plaintiff, (4) nothing in the record demonstrated that the defendant failed to make individuals with knowledge available, and (5) the last minute nature of the deposition. *Id.* at 483-84. While Plaintiff timely noticed Mr. McCabe's deposition, the other four facts considered by the Tenth Circuit can be found in this case.

Here, the Court concludes that Mr. McCabe's job duties require a very heavy time commitment. He works twelve to fourteen hours a day during the week and a total of six additional hours over the weekend. Mr. McCabe has 1,100 reports and he travels approximately 120 nights a year. Although Mr. McCabe was ill on more than one occasion last year, he took only one sick day off from work, during which he worked from home.

During the week, Mr. McCabe spends approximately four to five hours a day in meetings.  Nearly every day, Mr. McCabe meets with Wells Fargo's Chief Executive Officer, a member of Wells Fargo's Board of Directors, his direct reports, or one of his peers on Wells Fargo's operating committee.

Taking time out of his exceptionally busy schedule to prepare for and attend a deposition would severely impact not only Mr. McCabe's ability to get his job done, but also the schedules of those senior executives and Board members who he meets with on a regular basis.  Accordingly, the deposition of Mr. McCabe imposes a "severe hardship" and undue burden on Mr. McCabe and the operation of Wells Fargo's business.  *See* Thomas, 48 F.3d at 483.

Moreover, Plaintiff's extremely lengthy First Amended Complaint ("Complaint") does not set forth a claim for relief that Wells' Fargo's Audit Committee acted inappropriately.  Thus, while it is true that the Sarbanes-Oxley Act of 2002 ("SOX") does require publicly traded companies to have procedures for bringing complaints to the attention of the audit committee, Plaintiff brings her lawsuit under a completely separate provision of SOX that prohibits retaliation against whistleblowers.  Her retaliation complaint does not list Mr. McCabe or any member of the audit committee among the retaliators.  Thus, while the topics about which Plaintiff seeks to depose Mr. McCabe might have been directly relevant had she brought a claim for lack of compliance with SOX's audit committee requirements, they are not directly relevant to her Retaliation Complaint.  Even if they were, as discussed below, other employees of Wells Fargo

have been made available for deposition, and those other employees have first hand

knowledge of the issues about which Plaintiff seeks to depose Mr. McCabe.

In addition, Mr. McCabe lacks personal knowledge of Plaintiff's Ethics Line

Complaint.  Further, Mr. McCabe did not participate in the investigation into Plaintiff's

allegations of fraud and retaliation.  Nor did he provide any direction to anyone who was

involved in the investigation or oversee the investigation.  Mr. McCabe did not draft the

report provided to the Audit Committee about Plaintiff's allegations.  Mr. McCabe did not

discuss Plaintiff's claims with the Audit Committee, nor did he receive any questions

about the report from the Audit Committee.   Accordingly, like the defendant in Thomas,

*supra*, Wells Fargo has demonstrated that Mr. McCabe lacks personal knowledge of the

key issues  Plaintiff seeks to depose him on.  *See* Thomas, 48 F.3d at 483.

In this case, Wells Fargo offered to make available for deposition individuals with

first hand knowledge of the issues Plaintiff sought to depose Mr. McCabe about.

Specially, Wells Fargo, through its counsel and representatives, repeatedly informed

Plaintiff of Mr. Bacon's and Ms. Sperle's knowledge of these issues.  Therefore, Plaintiff

should have deposed Mr. Bacon and/or Ms. Sperle before seeking the deposition of one

of the Wells Fargo's highest ranking officers.

Plaintiff seeks to depose Mr. McCabe on the anonymous report he submitted to

the Audit Committee regarding Plaintiff's complaints.  Notably, the report was created by

Loretta Sperle and Michael Bacon.  Mr. McCabe had no role in deciding what went into

the report.  Counsel for Wells Fargo informed counsel for Plaintiff that Mr. McCabe's

involvement in the report is ministerial, he simply received the report and passed it to

the Board:

> [McCabe] is the 'General Auditor' and his only involvement in this matter
> at all would have been to receive reports that were forwarded on up the
> chain to him.  That chain goes from Shelly [Hunt] to her boss Michael
> [Bacon, Senior Vice President and Director of Special Investigations,] to
> his boss Bill [Wipprecht, Executive Vice President and Wells Fargo's Chief
> Security Officer,] before it gets to Kevin [McCabe].

(Docket No. 50-4).  Moreover, Ms. Hunt testified in her deposition that Ms. Sperle

was the best source for information about the reporting of Parmer's complaint to the

Audit Committee:

> **Q**      Do you know whether or not [Parmer's] complaint, was it ever
> transmitted to the A&E committee and the board?
>
> **A**      You would have to ask Loretta Sperle what they were provided
> with.
>
> (See Hunt Depo., at 157:11-16).

Ignoring counsel and Ms. Hunt's statements, Plaintiff did not seek the deposition

of Ms. Sperle or Mr. Bacon, who created the report on which Plaintiff seeks information.

Thomas, 48 F.3d at 483 (upholding protective order on appeal, in part, because nothing in the record showed that the defendant did not make available for deposition plaintiff's individuals who were actively involved in the events at issue).

Plaintiff further seeks to depose Mr. McCabe about whether it violates Wells Fargo's policies to instruct employees like Plaintiff that they cannot use the Ethics Line, because Ms. "Hunt said she didn't know the answer to this." (Doc. No. 68 at 4). However, a review of Ms. Hunt's actual testimony suggests otherwise. Instead of saying that she did not know the answer, Ms. Hunt indicated that she was "not aware of [such] a policy." (Hunt Depo. at 46:9-14). Thus, Ms. Hunt never testified that she does not know whether a policy exists. Moreover, Plaintiff could have easily obtained the applicable policy through a simple document request, and she could have deposed Mr. Bacon or Ms. Sperle about the policy. There is no evidence in the record that Mr. McCabe is in a better position to answer those questions (or any of the issues identified by Plaintiff) than Ms. Sperle or Mr. Bacon would be.

Plaintiff further seeks to depose Mr. McCabe about whether an investigation was conducted into her allegation that she was prohibited from using the Ethics Line. Yet, Ms. Hunt testified that Mr. Bacon directed the special investigations department (Hunt Depo. at 49:24-50:2) and, therefore, Mr. Bacon would have direct knowledge as to whether an investigation was completed into Plaintiff's claim that she was prohibited from contacting the ethics line. Thus, Plaintiff could have deposed Mr. Bacon on the issue, but chose not to. *See* Thomas, 48 F.3d at 483-84 (protective order prohibiting

the deposition of a high-ranking official upheld on appeal because the information could

have been obtained through the deposition of designated spokespersons or other

persons).

## ORDER

**WHEREFORE**,  based upon the findings of fact and conclusions of law, the court

orders:

(1)     That Defendants Motion For Protective Order prohibiting the deposition of

Kevin McCabe is **GRANTED**, and,

(2)     That the deposition of Kevin McCabe **shall not go forward**.


SIGNED AND DATED THIS 15th DAY OF MAY, 2009.

BY THE COURT:


s/Michael J. Watanabe
MICHAEL J. WATANABE
United States Magistrate Judge

12